HENRY PINNEY v. THE FIRST NATIONAL BANK
OF CONCORDIA.

No. 13,363. (75 Pac. 119.)

SYLLABUS BY THE COURT.

1. PRACTICE, SUPREME COURT—*Certificate of Transcript.* A certificate that a transcript of the record is full, true and correct is not impeached and overthrown by a statement in the record from which a mere inference may be drawn that something has been omitted from it, nor unless the record on its face affirmatively and satisfactorily shows that it is incomplete and incorrect.

2. CONTRACT—*Violation of Penal Statute.* Where a statute expressly provides that a violation thereof shall be a misdemeanor, a contract made in direct violation of the same is illegal and there can be no recovery thereon, although such statute does not in express terms prohibit the contract or pronounce it void.

3. PATENT-RIGHT—*Sale of Territory is Sale of Patent.* A sale of the exclusive right to manufacture, use and sell for use a patented invention in a specified territory for a period of two years carries with it an interest in the patent-right itself, and constitutes a sale of a patent-right within the meaning of the "act relating to the registration and sale of patent-rights, and prescribing a penalty for the violation of the same."

4. ——— *Promissory Notes Made Void by Violation of Penal Statute.* The taking of a promissory note, the consideration of which is the sale of a patent-right, or what is claimed by the vendor to be a patent-right, without inserting therein the words, "given for a patent-right," is, under our statute, a misdemeanor punishable by fine or imprisonment, and no recovery can be had thereon by one who violates the statute, or by a transferee of the note who has knowledge that the law was violated.

Error from Cloud district court; HUGH ALEXANDER, judge. Opinion filed January 9, 1904. Reversed.

*C. N. Peck,* and *F. W. Sturges,* for plaintiff in error.
*Park B. Pulsifer,* and *Dwight M. Smith,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, C. J. : The First National Bank of Concordia brought an action against Henry Pinney to recover on two promissory notes, each for the sum of $144, payable to the order of W. S. James, and indorsed by him to the bank. In his answer Pinney set up three grounds of defense. The first was a general denial, and the second alleged :

"That he executed the notes ; that he signed and delivered the same to the payee, W. S. James. He says, however, that the consideration thereof was the sale and transfer to him of a certain patent-right, to wit : The right to manufacture, use and sell for use in certain territory in this state, for the term of two years, to wit, in Shawnee county exclusively, and in other counties to wit, Jewell, Mitchell, Ottawa, Cloud, Clay, Republic and Washington, jointly with others, a certain window-lock or fastener known as the 'James window-lock,' for which the said W. S. James had obtained letters patent, No. 629,446, issued July 25, 1899. That said sale and transfer took place in this county and state, to wit, Cloud county, Kansas ; that although the said James had filed with the clerk of the district court of this county a copy of said letters patent, and also filed with said clerk an affidavit stating that said letters were genuine and had not been revoked and that he had full authority to sell or barter the same, which affidavit also set forth his occupation and residence, and the residence of his so-called principal, the James Lock Company, the said James and the said James Lock Company being one and the same, however, yet the said James did not, nor did any one, insert in said notes, or either of them, the words ''given for a patent-right,'' and the said notes were taken by the said James in violation of the law of this state, without consideration, and are illegal and void wheresoever and in whosoever hands they may be. And said defendant says that plaintiff did not purchase said notes in good faith for a valu-

able consideration in the usual course of trade, but purchased them well knowing at the time that they were given for a patent-right and all of the facts and circumstances under which they were given."

The third defense averred that there was an absence of novelty in the patent and hence a lack of validity.

The trial court, on motion of the bank, required Pinney to amend his answer and state whether the contract transferring the patent-right was oral or in writing, and, if in writing, to set out a copy of the same. In pursuance of this order the defendant filed a statement alleging that the sale was an oral transaction, but that a writing was executed for the purpose of making it appear that the sale was of something else than a patent-right. He averred, however, that it was a mere subterfuge to avoid the penalty of the statutes of the state; that the writing did not serve its purpose, as it appeared from the writing itself that the transaction was the sale and transfer of a patent-right. He alleged that the writing had been accidentally destroyed by fire, and that it was impossible for him to produce it, or a copy of the same.

A demurrer to the answer, on the ground that it did not state a defense, was sustained. Subsequently the court set aside its order and then sustained the demurrer, except as to the third count of the answer, and as to that defense the demurrer was overruled and time was given to reply. Later the defendant asked and obtained leave to withdraw the third count of the answer and the court then sustained a demurrer, holding that the remaining counts did not state a defense, and, the defendant electing to stand on the ruling of the court, judgment was given in favor of plaintiff.

Pinney comes here with a transcript of the record,

15—68 KAN.

alleging error, and the bank challenges the record and insists that the transcript is incomplete and therefore not open to our consideration. The certificate of the clerk attached to the transcript is in approved form and states that it is a full, true and correct transcript. It is said, however, that the record itself shows that it is incomplete in not including the demurrer to the answer which was filed after the withdrawal of the third count. Only one demurrer appears in the record, and that seems to have been filed on March 29, 1902, and was sustained on April 1 of that year. On September 25, 1902, the court appears to have considered a demurrer to the answer after the third count had been eliminated, but if a second demurrer was filed it has been omitted from the record. Some language in the record indicates that the sufficiency of the answer was tested by a second demurrer, and if it were satisfactorily shown on the face of the record that such a pleading was filed and not included in the record, it would impeach the certificate and we could not review the case. However, there is an entry in the record which seems to confirm the certificate and tends to show that but one demurrer was actually filed. After reciting the withdrawal of the third count on September 25, 1902, the journal entry proceeds to state that defendant "elects to stand on the order of this court of April 1, 1902, sustaining the demurrer to his answer," and the court thereupon rendered judgment on the notes. This would indicate that a second demurrer was not in fact filed, but that counsel and court adopted the first demurrer in testing the sufficiency of the answer after it had been amended by striking out the third count. We must, therefore, assume that the transcript is complete and examine the case on its merits.

Pinney v. Bank.

Does the omission from the notes of the words "given for a patent-right" render them illegal and prevent a recovery thereon?  The statute provides:

"Any person who may take any obligation in writing for which any patent-right, or right claimed by him or her to be a patent-right, shall form a whole or any part of the consideration, shall, before it is signed by the maker or makers, insert in the body of said written obligation, above the signature of said maker or makers, in legible writing or print, the words, 'given for a patent-right.'"  (Gen. Stat. 1901, § 4357; Laws 1889, ch. 182, § 2.)

Non-compliance with this and other provisions of the act is made a misdemeanor, the penalty of which is a fine not exceeding $1000 or imprisonment in the county jail not more than six months.  In *Mason v. McLeod*, 57 Kan. 105, 45 Pac. 76, 41 L. R. A. 548, 57 Am. St. Rep. 327, the validity of this act was sustained, and it was held that contracts made by a vendor of patent-rights in violation of the act are void as between the parties.

It is contended in behalf of the bank that the answer discloses that there was no transfer of a patent-right, within the meaning of the statute; that the contract pleaded is the transfer of a license and not of a patent-right and that the statute does not cover a mere license from a patentee.  Again, it is said that, under the United States law (3 Comp. Stat. U. S. 1901, § 4898), the assignment of a patent or any interest therein must be in writing, and if that which was undertaken to be transferred was a patent-right it was ineffectual because the contract of transfer was not in writing.

The pleader does not make himself very clear as to the nature of the transaction.  In one part of the amended answer he speaks of it as an oral transfer, and in a later part he says that a writeing was ex-

cuted between them which was intended to cover up the nature of the transaction, but that it appeared by the writing itself and upon its face that the transaction was the sale and transfer of a patent-right. In view of this averment it cannot well be said that the contract was not in writing. Although questioned by the bank, the answer fairly shows that the interest which the patentee undertook to transfer was a patent-right, or an interest therein. According to the answer, the interest transferred was the right to manufacture, use and sell for use a certain patented invention in prescribed territory for a fixed time. As to part of the territory the right was given to be exercised jointly with others, but an exclusive right was given to Shawnee county, Kansas, and to that extent, at least, the purchaser was given an interest in the patent, good not only against strangers but against the patentee himself. Such a transfer, if established by proof, must be held to constitute a sale of a patent-right within the meaning of our statute relating to the registration and sale of patent-rights. (*New v. Walker*, 108 Ind. 365, 9 N. E. 386, 58 Am. Rep. 40.)

That the transfer was not in writing, if it be a fact, may not be very important so far as this transaction is concerned. The federal act on the subject, which provides that every patent or interest in a patent shall be assignable in law by a writing and be recorded, relates mainly to the matter of notice to purchasers and is intended for the protection of those subsequently acquiring an interest in the invention. A writing is provided in order that it may be a matter of record, and the record so made only goes to the matter of notice to those who subsequently may become interested in the monopoly or invention. While an assignment in writing and the recording of the same are necessary

to the transfer of the legal title, binding upon all, it has been held that a verbal assignment is good between the parties and passes an equitable title, and that the failure to record an assignment is not material as between the parties and those having actual knowledge of the transfer. (*Burke v. Partridge*, 58 N. H. 349; *Blakeney v. Goode*, 30 Ohio St. 350; *Spears v. Willis*, 151 N. Y. 443, 45 N. E. 849; 2 Rob. Pat. § 784; 22 A. & E., Encycl. of L., 2d ed., 418.)

In this case it is specifically alleged that the bank was not a *bona fide* purchaser of the paper, but had actual knowledge that the notes were given for a patent-right, and also of all the facts and circumstances under which they were given. Here, however, the kind of title conveyed is not the real point in controversy, nor is it very material at this time whether the transfer was a grant, an assignment, or a license. The answer alleges that it was a patent-right which was transferred; but, even if it does not amount in law to a patent-right, the requirements of the statute must be complied with whether that which is sold is a patent-right or is only claimed by the vendor to be a patent-right. A note or obligation taken for what is claimed to be a patent-right, although it may not constitute one, must have the words "given for a patent-right," inserted therein the same as if a valid patent-right formed the whole or a part of the consideration. (Gen. Stat. 1901, § 4357; Laws 1889, ch. 182, § 2.)

It is finally contended that non-compliance with the statute, in omitting from the notes the words "given for a patent-right," did not render them void, for the reason that the consideration for the notes is not bad in itself, and further, that the statute does not so declare. It is true the statute does not in express terms

provide that the omission to state in a note or obligation that a transfer of a patent-right forms its consideration shall render it void. It does, however, specifically provide that non-compliance with the statute in this respect shall constitute a misdemeanor, and upon conviction the person violating the law may be fined as much as $1000 or be imprisoned in the county jail as long as six months. In determining whether a contract made in violation of a law is legal or illegal the test is the intention of the legislature. As was said in *Mason v. McLeod,* supra, the imposition of a punishment for the violation of a statute implies a prohibition, and contracts made by a vendor of patent-rights in violation of the act are void as between the parties and those having actual knowledge of the violation. In 15 A. & E. Encycl. of L., 2d ed., 939, it is laid down as an accepted rule that "where the statute expressly provides that a violation thereof shall be a misdemeanor, it would seem clear that it was the intention of the legislature to render illegal contracts violating such statute."

It is the settled doctrine of the common law that contracts intended to prohibit the doing of things forbidden by law, and made in violation of a penal statute, are void, and this is so although the statute may not expressly so declare, but only inflicts punishment upon the persons doing the act in violation of its provisions. (Chit. Contr., 10th Am. ed., 764–768 ; *Dillon & Palmer v. Allen,* 46 Iowa, 299, 26 Am. Rep. 145.) The supreme court of Indiana, in interpreting a law respecting the sale of patent-rights, has also held that on a contract, the making of which is punishable by statute by the imposition of a penalty, there can be no recovery, although such statute does not in express terms prohibit the contract nor pronounce it void.

(*Sandage et al. v. The Studebaker Bros. Manufacturing Co.*, 142 Ind. 148, 41 N. E. 380, 34 L. R. A. 363, 51 Am. St. Rep. 165.   See, also, *Woods v. Armstrong*, 25 Am. Rep. 671, and authorities collected in note; *The Winchester Electric Light Company et al. v. Veal*, 145 Ind. 506, 41 N. E. 334; *New v. Walker*, 108 id. 365, 9 N. E. 386, 58 Am. Rep. 40.)

The taking of the notes as alleged was a crime in itself, and it would hardly do to allow the party committing the offense to maintain an action on the obligations so criminally taken.   No rights can be acquired by persons who so violate a penal statute, nor by those who know that the act on which they ground their claim was done in violation of law.

We think the demurrer to the answer should have been overruled, and therefore the judgment of the district court is reversed, and the cause remanded with directions to overrule the demurrer and proceed with the cause.

All the Justices concurring.